IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**MIDDLESEX INSURANCE COMPANY,**
    **Plaintiff,**

-vs-                      Case No.  A-08-CA-305-SS

**PBC OPERATIONS, L.P. d/b/a Pioneer Breaker
& Control Supply Co.; PIONEER BREAKER
AND CONTROL SUPPLY CO.; TAMAS
TOLDY; CHRISTINA TOLDY DUNCAN;
SQUARE D COMPANY; BREAKERS
UNLIMITED INC.; and PBC SUPPLY, LP,**
    **Defendants.**

_____

## O R D E R

  BE IT REMEMBERED on the 14th day of October, 2009, the Court called the above captioned case and all parties appeared through counsel.  Having reviewed the file, and specifically Defendants PBC Operations, L.P. d/b/a Pioneer Breaker & Control Supply Co., Pioneer Breaker & Control Supply Co., individually, PBC Supply, LP, Tamas Toldy, and Christina Toldy Duncan (collectively "PBC")'s Motion to Alter or Amend Judgment [#91], Plaintiff Middlesex Insurance Company ("Middlesex")'s Response [#94]; and PBC's Reply [#95], and having considered the motion, the response, the reply, the relevant law, the hearing, and the case file as a whole, the Court enters the following orders:

### Background

  On April 23, 2008, Plaintiff Middlesex Insurance Company filed a declaratory action suit pursuant to 28 U.S.C. § 2201 to determine whether it has a "duty to defend or indemnify certain

Defendants or pay any insurance proceeds under the insurance policies in connection with the underlying actions." Pl.'s Compl. ¶ 2. The underlying Texas lawsuit is before the undersigned in the Western District of Texas, *Square D Co. v. Pioneer Breaker and Control Supply Co., et al.*, No. 1:07-CA-810-SS (hereinafter the "underlying suit"). The underlying suit involves the alleged unlawful importation, sale, and distribution of counterfeit Square D products by PBC in violation of the Lanham Act, RICO, and an alleged civil conspiracy.

Effective February 24, 2005, Middlesex issued a series of general liability policies to PBC which provided coverage through February 24, 2008.[1] Under Coverage B of the Policy, Middlesex agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies." Pl.'s Mot. for Summ. J. App. at 22. Based on information Middlesex received after beginning to provide a defense it decided to seek a declaratory judgment that there is no coverage under the terms of the policy for the allegations of the underlying suit and thus it owes no duty to defend or indemnify PBC in the underlying suit.

On August 31, 2009, the Court entered an order granting in part and denying in part Middlesex's motion for summary judgment. Ct.'s Order at 14 [#89]. In the order, the Court found there are two groups of claims in the underlying suit. The first are trademark infringement claims. The Court found Middlesex owed no duty to defend PBC against the trademark infringement claims, and thus no duty to indemnify for those claims "because those claims do not qualify as 'advertising injury.'" *Id.*

---

[1] The policy numbers were: 24-48262-00, 24-48262-01, and 24-48262-02. Pl.'s Mot. for Summ. J. App. 1–218. All three policies contain identical terms and conditions. *Id.* For purposes of simplicity, the Court will only refer to the first policy issued, No. 24-48262-00 as "the policy." *Id.* App. 1–88.

The second group of claims are trade dress infringement claims. The Court found these claims did qualify as advertising injury, but Middlesex owed no duty to defend PBC on these claims due to the application of the "first publication" exclusion in the policy. *Id.* However, because these claims did qualify as advertising injury, the Court denied summary judgment on the issue of Middlesex's duty to indemnify for the trade dress infringement claims. *Id.*

On September 3, 2009, PBC filed a Motion to Alter or Amend that judgment under Federal Rule of Civil Procedure 59(e). PBC's motion does not challenge the Court's order regarding the trademark infringement claims. Pl. Mot. at 2. PBC likewise does not dispute the Court's finding the trade dress infringement claims in the underlying suit are covered as advertising injury under the policy.[2] *Id.* PBC's only assertion is the Court committed a clear error of law in finding the "first publication" exclusion applied to the trade dress infringement claims and thus relieved Middlesex of the duty to defend those claims. *Id.* PBC asserts instead the "first publication" exclusion does not apply to the trade dress infringement claims because there are no allegations of any publication in the underlying suit. *Id.*

### I.    The "First Publication" Exclusion

Since the Court's summary judgment order is unchallenged on all but one point, the Court reiterates its findings: Middlesex has no duty to defend or indemnify on the trademark infringement claims, and the trade dress infringement claim constitutes a covered advertising injury under the policy. Thus, the Court's sole analysis is whether the "first publication" exclusion is properly applied to the trade dress infringement claim.

---

[2]PBC does, however, preserve their right to appeal these issues. Pl. Mot. at 2.

The policy excludes coverage for any advertising injury "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Pl.'s Mot. for Summ. J. App. at 23 ¶ 2(a)(2). Based on the Court's previous finding, unchallenged here, this order assumes there are allegations in the underlying suit of trade dress infringement as early as eleven years before the beginning of the policy period.

The question, however, is not merely whether the allegations of trade dress infringement pre-date the beginning of the policy period. Rather, the question is whether the trade dress infringement injuries alleged arose out of a publication pre-dating the beginning of the policy period. In order for the advertising injury at issue, trade dress infringement, to fall under the "first publication" exclusion the injury must be due to *publication* of material relating to the trade dress infringement. Merely pointing to the alleged trade dress infringement itself is not sufficient to show an injury arising out of a publication.

### A. Motion to Alter or Amend Must Clearly Establish a Manifest Error of Law

As both parties have correctly recognized, a Rule 59(e) motion serves a narrow purpose and is an extraordinary remedy which should be used sparingly. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). The movant must show the Court committed a clear error of law and that correction of the error is necessary to prevent injustice. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). This is a "lofty standard." Def. Mot. at 3.

### B. Summary Judgment Standard of Review

In reviewing the grant of summary judgment in its initial order for clear error of law on the on the issue of the "first publication" exclusion, the Court reiterates the summary judgment standard of review. Summary judgment may be granted if the moving party shows there is no genuine issue

of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial, and may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

C. **Eight-Corners Analysis**

The extent of an insurer's duty to defend is determined under the "eight-corners rule." *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Under this rule the Court examines the "third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations" to determine whether the

underlying suit potentially states a cause of action within the scope of the policy.[3] *Id.*; *see also Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599-600 (5th Cir. 2006). Most importantly, "facts outside the pleadings, *even those easily ascertained*, are ordinarily not material to the determination . . . ." *GuideOne*, 197 S.W.3d at 308 (emphasis added). If there is any doubt about whether the underlying complaint states a cause of action covered under the policy, the doubt should be resolved in favor of the insured. *Amer. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 324 (5th Cir. 2001).

### D.     Burden to Show an Exclusion Applies

When analyzing an insurer's duty to defend, the burden is on the insured to show an underlying suit presents a potential for coverage under the policy. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). Once that burden is met and the insurer relies on a policy exclusion to bar coverage, however, the burden shifts to the insurer to prove the exclusion applies. *Id.* Any doubt as to whether the allegations in the petition state a cause of action that falls within the coverage of the policy and that compels an insurer to defend must be resolved in favor of the insured. *American Nat'l Gen. Ins. Co. v. Ryan,* 274 F.3d 319, 324 (5th Cir.2001).

Thus, under the combination of the summary judgment standard, the eight-corners rule, the burden to show an exclusion applies, and the wording of the first publication exclusion itself, the Court's original order should not have required PBC to identify any allegation the trade dress infringement began after the inception of the policy. Ct. Order at 11. The question was not whether "the Defendants knew or should have known they were selling counterfeit products well before the

---

[3]The "eight-corners" is a reference to the fact that two documents, the pleadings and the policy, each with four corners, may be considered.

effective date of the Middlesex policy," *id.*, but whether Middlesex, under the eight-corners rule, could show no issue of material fact that the trade dress infringement injury alleged in the underlying complaint was due to a "publication" before the inception of the policy such that the first publication exclusion should apply. If correction of this error is necessary to prevent injustice, then the Court must amend its earlier order. Thus the Court will examine whether Middlesex could have met its burden, in which case correction of the earlier order would not alter the result. If Middlesex cannot meet its burden, then the Court's order must be altered.

## II.     Middlesex's Evidence for the Application of the First Publication Exclusion

Middlesex relies on two paragraphs in the underlying complaint and disputed evidence regarding PBC's website to argue for the application of the first publication exclusion. *See* Pl. Resp. #94; Pl. Mot. for Summ. J. #68. The complaint paragraphs read in full:

> 67.    Square D at no time consented to defendants' use of Square D's trademarks or trade dress for any purpose, including the advertising of any Square D products, whether authentic or counterfeit.
>
> 68.    As a result of the defendants' unlawful marketing and sale of counterfeit goods, Square D has suffered injury to its reputation and goodwill. In addition, Square D has suffered injury in the form of lost sales in an amount yet to be determined.

Pl. Mot. for Summ. J. at App. 278 ¶¶ 67-68. Merely including a reference to advertising and marketing, however, is not sufficient to show the trade dress infringement injury arose from a publication. There are no Fifth Circuit cases precisely addressing what is required to show injury arising from a publication such that a first publication exclusion will apply to negate an insurer's

duty to defend. There are, however, several cases discussing publication, the requirements for showing it and what is and is not included in its definition.

The underlying complaint must show a connection between the alleged publication or advertising and the underlying claims. *Sentry Ins. v. R.J. Weber Co., Inc.*, 2 F.3d 554, 557 (5th Cir. 1993). Allegations of publication in the complaint, but without dates on which the publication occurred, do not establish "beyond peradventure" the claims arose before the beginning of the policy period. *Sentry Ins. v. DFW Alliance Corp.*, 2007 WL 507047 (N.D. Tex. Feb. 16, 2007). Further, publication is defined as only something orally or in writing leading to an advertising injury. *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 714 (S.D. Tex. 2000), *recon. denied*, 208 F. Supp. 2d 687 (S.D. Tex. 2001) (also explaining publication is not the same as manufacturing, distribution or sale of infringing products).

Even the broadest definition of publication still requires allegations of printed or oral material issued for public distribution. *Nutmeg Ins. Co. v. Employers Ins. Co. of Wausau*, 2006 WL 453235 (N.D. Tex. Feb. 24, 2006) (indicating publication does not, however, require communication to a third-party). Finally, even if the underlying complaint has specifically alleged multiple instances of publication, but has failed to identify when the publication occurred, one court has held the evidence was insufficient to show publication prior to the inception of the policy. *Ryland Group, Inc. v. Travelers Indem. Co. of IL*, 2000 WL 33544086 (W.D. Tex. Oct. 25, 2000). Thus, courts require at least some specific allegation indicating publication gave rise to the injuries alleged and specific allegations the publication occurred prior to the beginning of the policy period. Alleging sales or vague allusions to advertising and marketing, without allegations of printed or oral materials issued for public distribution, is not sufficient evidence of publication, even under the broadest definition.

Presumably sensing the allegations in the underlying complaint were insufficient to give rise to the first publication exclusion, Middlesex sought to introduce evidence in its summary judgment motion indicating exactly when and how PBC published information on its website regarding its alleged distribution of counterfeit products. Pl. Mot. for Summ. J. at App. 371-86 (Dep. of Neil Selman and ex. "WayBackMachine" website archive).

The Court's original order did not address the disputed evidence regarding PBC's website. Ct. Order at 15, n.7. However, this order cannot avoid addressing it. While the evidence may be compelling regarding the issue of whether any publication occurred, giving rise to the application of the first publication exclusion, it is not admissible under the eight corners rule to determine the extent of an insurer's duty to defend.

    A.    **Analyzing Middlesex's Evidence Under the Eight-Corners Rule**

The eight-corners rule is well established in Texas. *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (summarizing the eight-corners rule in Texas). It strictly limits the determination of an insurer's duty to defend to the facts alleged in the underlying complaint and the language of the policy. *Id.* Some courts have allowed an exception to the rule for situations where the extrinsic evidence presented is undisputed information. *Bayou Bend Homes, Inc. v. Scottsdale Ins. Co.*, 2006 WL 2037564, at *6 (S.D. Tex. July 18, 2006). The Texas Supreme Court, however, has refused to recognize such an exception despite several opportunities to do so. *See e.g. Pine Oak Builders, Inc. v. Great Amer. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009) ("Although this Court has never expressly recognized an exception to the eight-corners rule, other courts have.").

This Court refuses to create an exception to the eight-corners rule where the Texas Supreme Court has had the opportunity to create the same exception and has refused. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004) ("[T]his Court makes its *Erie* guess that the current Texas Supreme Court would not recognize any exception to the strict eight-corners rule.") Thus, this Court will not consider the extrinsic evidence regarding PBC's website for the purpose of construing Middlesex's duty to defend under the eight-corners rule. Without the additional evidence, Middlesex fails to carry its burden to show the "first publication" exclusion applies.

Unfortunately for Middlesex, "facts outside the pleadings, *even those easily ascertained*, are ordinarily not material to the determination [of an insurer's duty to defend]. . . ." *GuideOne*, 197 S.W.3d at 308 (emphasis added). Middlesex makes a variety of arguments, to which the Court is highly sympathetic, showing the entire realm of facts presented by the underlying complaint strongly "implicate[s] the first publication exclusion." Pl. Mot. for Summ. J. at 12; *see also* Ct. Order at 8 (listing facts alleged in underlying complaint which indicate the likelihood of publication occurring). Simply put, however, this does not meet Middlesex's burden. The pleadings do not contain any specific allegations the trade dress infringement claims arose out of any publication, much less the date or dates of such publication. The Court's original reasoning involved drawing factual conclusions, easily ascertained but outside of the pleadings, in violation of the eight-corners rule.

### III.  The Burden Shifting Error was Prejudicial

The Court did not properly consider the factual allegations in the underlying complaint when it concluded the "first publication" exclusion barred Middlesex's duty to defend the trade dress infringement claims. Under the eight-corners rule Middlesex fails to carry its burden to show the

"first publication" exclusion applies. Thus, the Court's error finding no duty to defend on the trade dress infringement claims was prejudicial to PBC. There is insufficient evidence to show the trade dress infringement arose from a publication, and thus insufficient evidence to negate Middlesex's duty to defend PBC on the trade dress infringement claims in the underlying suit.

The underlying complaint never alleges the trade dress infringement injury was due to a publication, either orally or in writing, prior to the beginning of the policy period. Middlesex reasonably believes eleven years of sales necessitate some publication, and the Court's original order agreed with that logic. However, case law and the burdens of pleading discussed above require more than the implication the "first publication" exclusion would apply. Middlesex has failed to meet this burden.

### IV.  Conclusion

As the Court stated in its original order, PBC "could not have sold the allegedly counterfeit products without marketing them in some way, whether orally or in writing." Ct. Order at 11 n.6. The Court continues to believe it strains reason to think PBC could sell products for eleven years without ever publishing something injurious, either orally or in writing. There remains a theoretical possibility, however, there was no advertising or marketing related to the trade dress infringement prior to coverage under the policy. As such, the Court cannot say as a matter of law there is no duty to defend on the advertising injury claims. As written, the underlying complaint does not specifically allege any oral or written publication, nor does it specify when any advertising or marketing of the counterfeit products may have begun. Accordingly, the Court concludes Middlesex is not entitled to summary judgment based on the "first publication" exclusion. Thus the Court must amend its order to account for Middlesex's failure to carry its burden on this issue.

The court thus vacates its earlier order and judgment and denies Middlesex summary judgment on the issue of the application of the "first publication" exclusion to the trade dress infringement claims. The Court's order granting Middlesex summary judgment on the trademark infringement claims and the finding that the trade dress infringement claims constitute an advertising injury remain valid. Accordingly,

IT IS ORDERED that PBC's Motion to Alter/Amend Judgment [#91] is GRANTED.

IT IS FURTHER ORDERED that the Court's order of August 31, 2009 [#89] is SET ASIDE.

IT IS FURTHER ORDERED that the Court's judgment [#90] is vacated.

IT IS FINALLY ORDERED that Plaintiff Middlesex owes NO DUTY TO DEFEND OR INDEMNIFY Defendants for damages arising from any trademark infringement claims in the underlying Texas suit.

SIGNED this the 5th day of November 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE